247 S.E.2d 355 (1978)
L. Douglas WILDER
v.
THIRD DISTRICT COMMITTEE OF the VIRGINIA STATE BAR.
Record No. 761562.
Supreme Court of Virginia.
August 31, 1978.
*356 S. W. Tucker, Richmond (Hill, Tucker & Marsh, Richmond, on brief), for appellant.
Stuart H. Dunn, Deputy Atty. Gen. (Anthony F. Troy, Atty. Gen., on brief), for appellee.
Before I'ANSON, C. J., and CARRICO, HARRISON, COCHRAN, HARMAN, POFF and COMPTON, JJ.
PER CURIAM.
This is an appeal by L. Douglas Wilder, an attorney, from an order of the court below reprimanding him for violating two disciplinary Rules of Court: (1) Rule 6-101(A)(3), which provides that "a lawyer shall not neglect a legal matter entrusted to him", and (2) Rule 7-101(A)(3), which provides that "a lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship. . .". The disciplinary proceeding against Wilder was initiated by the Third District Committee of the Virginia State Bar and arose out of the employment of Wilder by Cortess Wills, Jr., and other members of his family to recover damages for injuries they sustained in an automobile accident.
On August 15, 1966, Cortess Wills, Jr., his wife, three children and a nephew, residents of East Orange, New Jersey, were injured in an automobile accident in Chesterfield County. It appears that the proximate cause of the accident was the negligence of Anna Ruth Neal, the operator of the other vehicle involved. Wilder's employment occurred immediately after the accident. The record reflects little activity by him for approximately two years, other than a letter he wrote Mrs. Wills on March 6, 1968, stating that he was trying to negotiate a settlement of her case and that her nephew's case was going to be separate from the cases of her family. On July 31, 1968, Wilder instituted action in the United States District Court for the Eastern District of Virginia, Richmond Division, on behalf of his clients against Neal and attempted to obtain service of process on her at 1201 Magnolia Street, Richmond, the address Neal had given to the Division of Motor Vehicles at the time of the accident. The United States Marshall promptly reported that he was unable to locate Neal within his district, even though he had checked with the Virginia Electric and Power Company, the City of Richmond and the Division of Motor Vehicles. The action brought against Neal abated on February 13, 1969, and Wilder was advised accordingly. The Wills family was not notified. On the contrary, and although there were no proceedings then pending in court, Wilder wrote Mrs. Wills on August 14, 1969: "Your *357 case is proceeding as well as can be expected at the moment. I shall keep you apprised of any new developments."
Some twenty months later, and preliminary to obtaining service upon the Commissioner of the Division of Motor Vehicles, Wilder filed with the Division an affidavit alleging that Neal was a nonresident of Virginia. This was followed, on May 20, 1971, by a new complaint filed on behalf of Cortess Wills, Jr., and four other members of his family, in the United States District Court. Service of process upon Neal was obtained through the Commissioner of the Division of Motor Vehicles. No responsive pleadings were filed by Neal, and she was therefore in default after the lapse of twenty days.
On October 7, 1971, Wilder addressed a letter to "Motor Company of America", 540 Main Street, Orange, New Jersey, inquiring if it were the liability carrier for Cortess Wills, Jr., when he was involved in the accident on August 15, 1966. He enclosed a copy of the most recent complaint filed in the United States District Court. On March 23, 1972, Wilder wrote Mrs. Wills that he had received no response from the insurance company, other than a copy of a letter he enclosed, dated October 12, 1971, from a local insurance agency in Orange, New Jersey, to St. Paul Fire and Marine Insurance Company, transmitting the complaint which Wilder sent Motor Company of America on October 7, 1971. It appears from the agency's letter that the St. Paul Company did in fact insure the vehicle of Cortess Wills, Jr., by a liability policy which was in effect on August 15, 1966.[1]
On March 2, 1973, and despite the information then in his files that the Cortess Wills, Jr. automobile involved in the accident was insured by the St. Paul Company, Wilder amended his pleadings in the United States District Court and added "Motor Club of America", not St. Paul Fire and Marine Insurance Company, as a party defendant in the action brought by the members of the Wills family against Neal. Motor Club of America promptly moved to dismiss, and its motion was granted on September 20, 1973. At that time Wilder moved to amend his complaint by adding "the proper defendant" (presumably St. Paul Fire and Marine Insurance Company), which motion was denied. Wilder thereupon took a voluntary nonsuit. The effect of the nonsuit was that the enforcement by the adult members of the Wills family of their actions against Neal was forever barred by the statute of limitations.
Having accepted employment to represent Cortess Wills, Jr., and other members of his family in the prosecution of their claims for damages against Neal, it became the duty of Wilder to exercise his best professional efforts on behalf of his clients. The cases were relatively simple. First, Wilder had to determine if personal service of process could be obtained on Neal, who was probably a resident of Richmond in August, 1966. If not, substituted service provided for by statute was available. It was further necessary for him to ascertain if Neal was financially responsible, and if there was liability insurance on her automobile which was involved in the accident. If Neal was not financially responsible, and did not have liability insurance, Wilder should then have ascertained if the policy of liability insurance which covered the Wills automobile had an uninsured motorist endorsement, and, if not, whether such an endorsement was required by the laws of New Jersey.
*358 The making of these various determinations by Wilder was routine and required no extraordinary legal expertise, only diligence and promptness. He offered no valid excuse for the unreasonable and inordinate procrastination and delay in the prosecution of the Wills cases. Nearly two years elapsed after Wilder's employment as counsel before he brought action to recover for his clients, and then he allowed this action to abate. Then, nearly two additional years elapsed before Wilder filed a second complaint and secured substituted service of process upon Neal, service which could have been made at the time the first complaint was filed. By the time the second complaint was filed Wilder knew, or should have known, that Neal was an uninsured motorist. Notwithstanding this, he made Motor Club of America a party defendant instead of St. Paul Fire and Marine Insurance Company, the company having the Wills' liability coverage and possibly the uninsured motorist coverage.
The letter which Wilder wrote to his client on August 14, 1969, informing her that her case was progressing as well as could be expected, could obviously have had no effect other than to mislead his clients.
We are not impressed with appellant's claim that he was concerned primarily with the collectability of any judgment which he might have obtained against Neal, or of his professed reluctance to expose his client to the expense of securing a worthless judgment. The decision whether to obtain judgment against Neal, regardless of her financial responsibility or her uninsured status, was a decision that should have been made by the Wills and not by Wilder. Plaintiffs in damage suits frequently obtain judgments which they know cannot be immediately collected, but with the hope or expectation that at some time in the future their judgment debtor will accumulate or inherit property, or otherwise become financially responsible. The action of the defendant in voluntarily dismissing his clients' actions on September 20, 1973, without their knowledge and consent, and thereby forever barring recovery by the adults, was improper and without justification.
We concur in the action of the trial court in finding that Wilder was guilty of inexcusable procrastination in handling the cases involved here; that he neglected a legal matter entrusted to him; and that he prejudiced and damaged his clients during the course of the professional relationship which he enjoyed with them. We agree that his actions constituted unprofessional conduct and warranted the reprimand given him by the lower court.[2]
We find no merit in the various procedural objections advanced by the appellant. A proceeding to discipline an attorney is not a criminal proceeding, and its purpose is not to punish him but to protect the public. It is not a law suit between parties litigant but is rather in the nature of an inquest or inquiry into the conduct of an attorney. See Seventh District Committee v. Gunter, 212 Va. 278, 183 S.E.2d 713 (1971); Maddy v. District Committee, 205 Va. 652, 139 S.E.2d 56 (1964). The disciplinary action initiated by the Third District Committee occurred after the receipt by the Committee of a written complaint by Cortess Wills, Jr. The Committee was properly constituted and legally authorized to conduct a hearing on the complaint and to take action thereon. The record shows that Wilder was fully informed of the nature of the charges preferred against him by his former clients and that he was accorded every opportunity to answer these charges, to appear, to testify and to introduce testimony in his behalf. Wilder had full notice of all proceedings before the Committee and in the lower court. A reference to his testimony will disclose no substantial controversy over the salient facts recited in this opinion and which the trial court found were established by the evidence.
*359 The judgment of the lower court is
Affirmed.
NOTES
[1] The enclosure sent Mrs. Wills by Wilder was a copy of a letter addressed to the St. Paul Company, 75 Halsted Street, East Orange, New Jersey, from Gonzer-Haggerty Agency, 540 Main Street, Orange, New Jersey. It identified the Cortess Wills' automobile liability policy as policy # 266HG4316, issued by the St. Paul Company, effective February 14, 1966, to February 14, 1967. The connection, if any, between the Gonzer-Haggerty Agency and the Motor Club of America or the Motor Company of America, is not explained in the record. The Wills policy does show on the face thereof that the agency for the St. Paul Company in August, 1966, was "Clarence Haggerty, 540 Main Street, Orange, New Jersey". The October 12, 1971 letter from the agency to the St. Paul Company was written on the Gonzer-Haggerty Agency stationery and signed by "Clarence E. Haggerty, Jr., Broker".
[2] In his written opinion, the trial judge, after making certain findings, said:

"In conclusion, it should be observed that defendant's conduct in regards these violations does not reflect upon his character, nor upon his legal ethics but is limited to his procrastination and neglect and handling the claims."