## Gloria Reese

### v.

## Commonwealth of Virginia

Record No. 841330

October 11, 1985

Present: All the Justices

*Larry A. Pochucha (Smith and Pochucha*, on brief), for appellant.
*Marla Lynn Graff, Assistant Attorney General (William G. Broaddus, Attorney General*, on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Gloria Reese was tried by the court, sitting without a jury, on an indictment charging her with grand larceny of a motor vehicle. The court found her guilty of unauthorized use of an automobile having a value of less than $200, suspended imposition of sentence for three years upon good behavior, placed her on supervised probation, and ordered her to pay specified costs. On appeal, Reese contends that the trial court erred in denying her motion to strike the evidence after all the evidence had been presented. We agree that the evidence is insufficient to support the conviction.

Gail Burrell testified that about 8:15 a.m. on March 14, 1984, she parked a white 1969 Ford station wagon on Cumberland Street in Richmond before attending classes. The vehicle was owned by her father but was in her sole possession. When Gail returned some time later she discovered that the station wagon was missing. She telephoned her mother to pick her up. When she next saw the car, after the police had found it, she saw that "the wires were cut because it was hot wired, and there was a missing hubcap." Gail did not know Reese and had not given her permission to move the vehicle.

Gail's mother, Jane Burrell, testified that her daughter telephoned her about 11:45 a.m. Mrs. Burrell proceeded to drive to the vicinity of Virginia Commonwealth University. She was at the corner of Harrison and Cary Streets about 12:45 p.m. when she saw the Ford station wagon drive past her headed east on Cary. A black male was driving accompanied by a black female passenger. When the station wagon passed her, Mrs. Burrell identified the license number. She could not identify either of the occupants.

The crucial evidence for the Commonwealth was the testimony of Earl H. Clark, Jr., a detective assigned to auto-theft investigation. About 1:02 p.m. Clark received an "all units broadcast" to be on the lookout for the white station wagon with Virginia license AEV-402. He stopped his car at the curb at Belvedere or Smith Street. Approximately four minutes later he saw the described vehicle, with two occupants, go north on Belvedere from Clay Street. Clark followed immediately behind the station wagon and observed the passenger "turn and look out the back . . . and turn back to the operator . . . ." The passenger's lips moved and she made a motion with her hand. The vehicle proceeded east on Leigh, turned left onto Judah, then right onto Duval. At that time, Clark turned on his red lights. As soon as he did so, the station wagon "sped up very fast" and led Clark on a brief chase that ended in an alley blocked by a truck. The driver stopped the station wagon behind the truck, jumped out, and fled. Clark arrested the passenger, Gloria Reese, who made no attempt to escape. The passenger door was close to a concrete abutment but could have been opened.

The Commonwealth presented no other evidence. Reese's motion to strike the evidence was denied. Reese presented a witness who testified that Reese did not have a driver's license and could not drive. Reese then renewed her motion to strike the evidence, and it was again denied.

■ Under Code § 18.2-102, a conviction of unauthorized use of a vehicle requires proof of use without the consent of the owner with intent temporarily to deprive the owner of possession, without intent to steal, or proof of assistance in such use.

■ The trial judge concluded that the taking of the station wagon was a joint venture of Reese and the driver. Stressing the inference of guilt arising from possession of recently stolen property, the judge several times stated that the evidence showed that after Reese looked back the driver accelerated. The evidence, however, is that the driver did not speed up until the detective turned on his red lights several blocks after Reese had looked back and spoken to the driver.

It further appears that the trial judge inferred that Reese knew that the station wagon was "hot wired" because it had no key in the ignition. There is no evidence to justify this inference.

The vehicle could have been taken at any time during a period of more than three hours. It is a reasonable inference that Reese

was the black female Mrs. Burrell saw in the passenger seat at 12:45 p.m., but there is no evidence to justify the inference that Reese was present when the station wagon was taken.

The Commonwealth relies on the theory of joint exclusive possession of recently stolen property. *See Best* v. *Commonwealth,* 222 Va. 387, 389, 282 S.E.2d 16, 17 (1981); *Carter* v. *Commonwealth,* 209 Va. 317, 323, 163 S.E.2d 589, 594 (1968), *cert. denied,* 394 U.S. 991 (1969). But, giving the Commonwealth the benefit of all reasonable inferences, as we must, we conclude that the evidence fails to establish joint exclusive possession. There must be evidence of joint control to justify the inference of joint possession. *See Moehring* v. *Commonwealth,* 223 Va. 564, 568, 290 S.E.2d 891, 893 (1982). The Commonwealth presented no evidence that Reese exercised any degree of dominion or control over the station wagon. The evidence of Reese's mere presence in the stolen vehicle is not enough to support a conviction of Reese as a principal in the second degree. *See Hall* v. *Commonwealth,* 225 Va. 533, 537, 303 S.E.2d 903, 904 (1983).

In *Moehring,* we reversed the conviction of a hitchhiker who had accepted a ride in a vehicle that he knew was stolen. Here, there is no evidence that Reese knew the vehicle was stolen. Although the wires in the car had been cut, there is no evidence that Reese noticed them. Gail Burrell, who was looking for changes in the condition and appearance of the car after she regained possession, saw that the wires were cut. It is unreasonable to assume, however, that a mere passenger would observe the condition of the wires, if in fact they were visible.

The evidence gives rise to suspicion of guilt but it is not sufficient as a matter of law to establish guilt by the requisite standard of proof beyond a reasonable doubt. Accordingly, we will reverse the judgment of the trial court and dismiss the indictment.

*Reversed and final judgment.*